IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| MICHAEL D. AND MADELINE D., <br><br>                   Plaintiffs, <br><br> v. <br><br> ANTHEM HEALTH PLANS OF KENTUCKY, INC., <br><br>                   Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART CROSS-MOTIONS FOR SUMMARY JUDGMENT** <br><br> Case No. 2:17-cv-675 <br><br> District Judge Jill N. Parrish |

This ERISA case is before the court on the parties' cross-motions for summary judgment. Defendant Anthem Health Plans of Kentucky, Inc. ("Anthem") moved for summary judgment on June 5, 2018 (ECF No. 38). On June 9, 2018, plaintiffs Michael D. ("Mike") and Madeline D. ("Maddie") (collectively "Plaintiffs") moved for summary judgment as well (ECF No. 40).

## I.      BACKGROUND

This dispute involves the denial of benefits allegedly due under a group health benefit plan provided by US WorldMeds, LLC to its employees ("the Plan"). The Plan is fully insured by Anthem and governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. section 1001, *et. seq.* ("ERISA"). Anthem is also the administrator of the Plan and has reserved discretionary authority to make decisions regarding coverage. Mike, as an employee of US WorldMeds, LLC, is a participant in the Plan and his daughter Maddie is a beneficiary of the Plan.

### A. MADDIE'S HISTORY

Maddie, a very bright girl, has struggled with a variety of mental health conditions over the years, including attention deficit/hyperactivity disorder ("ADHD"), Persistent Depressive

Disorder, Borderline and Narcissistic Personality Features, anxiety, suicidal thoughts, and self-harm behavior ("cutting"). On August 30, 2014, Maddie was admitted at Aspiro Wilderness Adventure Therapy ("Aspiro") for stabilization and assessment. She resided there and received "wilderness therapy"[1] until she was discharged on November 11, 2014. Maddie was then admitted to Uinta Academy ("Uinta") on November 11, 2014, where she received "residential treatment" for over a year until her discharge on December 17, 2015. Plaintiffs first submitted claims for coverage of the Aspiro medical expenses on April 29, 2015 and for the Uinta expenses on October 26, 2015. Anthem denied both claims.

## B. ASPIRO TREATMENT

Upon receipt of Plaintiffs' claims for coverage of treatment at Aspiro, Anthem conducted a retrospective review and denied coverage. The "Explanation of Payment" section of the Explanation of Benefits ("EOBs") sent to Mike from Anthem explains that Anthem reduced payment for the "benefits for this service [at Aspiro] because you were not precertified" and "[p]re-certification is needed for certain services under the Health Care Management guidelines." Then, in a letter dated May 4, 2015, Anthem notified Plaintiffs that Maddie's claim for benefits at Aspiro was denied because there are no benefits in the Plan for a "Wilderness Camp Program." Anthem's letter did not address the precertification issue, nor did it refer Mike to any specific section in his benefit plan.

Mike appealed the denial of the Aspiro claims on October 1, 2015. Anthem received the appeal on October 5, 2015. Mike alleges that he did not receive a response to his appeal for coverage of the Aspiro treatment during the time prescribed by the Plan or by ERISA. Accordingly,

---

[1] Aspiro is the self-proclaimed "pioneer of Wilderness Adventure Therapy." It offers "short-term, intermediate treatment options for teenagers and young adults." Anthem's Mot. S.J. at ¶ 14.

on June 24, 2016, Mike wrote a letter to the Kentucky Department of Insurance ("KDOI") asking the Consumer Protection Division to investigate. KDOI contacted Anthem and asked for further information regarding the claims. KDOI and Anthem exchanged various communications. In one response, Anthem provided a copy of the letter it allegedly sent to Mike on November 4, 2015, denying his appeal for coverage of the "Wilderness Camp Program at Aspiro" because wilderness camps are not a covered benefit. The letter directed Mike to a specific section of his Plan benefits booklet and the EOBs, and informed Mike that he had exhausted his appeal rights with Anthem. On November 16, 2016, KDOI informed Mike that it was upholding Anthem's denial of benefits because Aspiro was a wilderness camp and therefore clearly excluded under the Plan.

### C. UINTA TREATMENT

Anthem also denied coverage of treatment at Uinta. EOBs issued to Mike from April 27, 2015 through May 20, 2016 explain payments were not made to cover the services at Uinta because the services were not "pre-certified." Then, in a letter dated November 10, 2015, Anthem informed Mike that, after a retrospective review, Anthem denied coverage for the Uinta expenses because Maddie's treatment at Uinta, a "Residential Treatment Center," was not medically necessary. Mike appealed the denial of the Uinta treatment on May 5, 2016. Anthem notified Mike through letter on June 1, 2016 that it was upholding its decision and that he had exhausted his appeal rights. Mike then requested external review of this decision by an independent review organization on September 26, 2016. The external reviewer upheld Anthem's denial.

Mike and Maddie filed their single-count Complaint on June 23, 2017 seeking recovery of benefits under 29 U.S.C § 1132(a)(1)(B). Under Count One, Plaintiffs also allege that Anthem breached its fiduciary duties under 29 U.S.C. § 1104 and § 1133 by failing to act solely in the interest of the Plan participants and beneficiaries when it denied Maddie's benefits and by failing to provide a full and fair review as required under the Plan and by ERISA. Plaintiffs seek judgment

in the amount of $200,000.00, plus prejudgment interest pursuant to Utah Code Ann. § 15-1-1, and attorney fees and costs incurred under 29 U.S.C. § 1132(g). The court held oral argument on these motions on January 24, 2019. On the basis of that hearing, the parties' briefs, and a review of the relevant law, the court grants in part and denies in part Anthem's Motion for Summary Judgment and grants in part and denies in part Plaintiffs' Motion for Summary Judgment.

## II.    LEGAL STANDARD

### A. SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When both parties move for summary judgment in an ERISA case, thereby stipulating that a trial is unnecessary, "summary judgment is merely a vehicle for deciding the case; the factual determination of eligibility of benefits is decided solely on the administrative record, and the non-moving party is not entitled to the usual inferences in its favor." *LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 796 (10th Cir. 2010) (quoting *Bard v. Boston Shipping Ass'n*, 471 F.3d 229, 235 (1st Cir. 2006)).

### B. STANDARD OF REVIEW FOR DENIAL OF BENEFITS

"[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If the plan explicitly vests such discretion with the administrator, a reviewing court will apply "a deferential standard of review, asking only whether the denial of benefits was arbitrary and capricious." *Weber v. GE Grp. Life Assurance Co.*, 541 F.3d 1002, 1010 (10th Cir. 2008) (internal citation and quotation marks omitted). The court

"consider[s] only the rationale asserted by the plan administrator in the administrative record and determine[s] whether the decision, based on the asserted rationale, was arbitrary and capricious." *Spradley v. Owens-Illinois Hourly Employees Welfare Ben. Plan*, 686 F.3d 1135, 1140–41 (10th Cir. 2012) (citation omitted).

Review under an arbitrary and capricious standard "is limited to determining whether [the plan administrator's] interpretation was reasonable and made in good faith." *Fought v. UNUM Life Ins. Co. Of Am.*, 379 F.3d 997, 1003 (10th Cir. 2004) (alteration in original) (quoting *Hickman v. GEM Ins. Co.,* 299 F.3d 1208, 1213 (10th Cir. 2002)). The court should consider "whether: (1) the decision was the result of a 'reasoned and principled process,' (2) is 'consistent with any prior interpretations by the plan administrator,' (3) is 'reasonable in light of any external standards,' and (4) is 'consistent with the purposes of the plan.'" *Flinders v. Workforce Stabilization Plan of Phillips Petroleum Co.*, 491 F.3d 1180, 1193 (10th Cir. 2007), *abrogated on other grounds by Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008) (quoting *Fought*, 379 F.3d at 1003). The court "need not determine that the Plan's interpretation was the only logical one, nor even the best one. Instead, the decision will be upheld 'unless it is not grounded an any reasonable basis.'" *Id.* (quoting *Finley v. Hewlett–Packard Co. Employee Benefits Org. Income Protection Plan,* 379 F.3d 1168, 1176 (10th Cir. 2004)).

However, if there were "procedural irregularities" the court may apply a less deferential standard. *See Kellogg v. Metro. Life Ins. Co.*, 549 F.3d 818, 825–27 (10th Cir. 2008) (citing *Fought*, 379 F.3d at 1003). The Tenth Circuit has also enunciated a framework for "dial[ing] back" the level of deference accorded to an administrator's decision when the administrator is operating under a conflict of interest as both fiduciary and insurer. *See Weber*, 541 F.3d at 1010 (citing *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 (2008)). Even though the Plan at issue contains

discretionary language, Plaintiffs argue that Anthem's failure to comply with the Plan procedures and its breach of fiduciary duty entitles them to a de novo standard of review.

### 1. Reservation of Discretionary Authority

The Plan at issue in this case has vested discretion in the administrator as set forth in the "Reservation of Discretionary Authority" section:

> The Plan, or anyone acting on Our behalf, shall determine the administration of benefits and eligibility for participation in such a manner that has a rational relationship to the terms set forth herein. However, We, or anyone acting on Our behalf, have, to the fullest extent permitted under application law, discretion to determine administration of your benefits. Our determination shall be binding, subject to any rights of complaint and/or appeal provided under the Certificate or under applicable law. This may include, without limitation, determinations of whether the services, care, treatment, or supplies are Medically Necessary, Experimental/Investigational, whether surgery is cosmetic, and whether charges are consistent with Our Maximum Allowed Amount . . . .

It is uncontested that the language of the Reservation of Discretionary Authority section sufficiently vests discretionary authority in the administrator to entitle Anthem to an arbitrary and capricious standard for its decisions, absent the alleged breach of fiduciary duty and failure to comply with the Plan procedures.

### 2. Anthem did not Fail to Comply with the Plan's Procedures

The Plan administrator's denial of benefits is only entitled to a "deferential standard of review to the extent the administrator actually exercised a discretionary power vested in it by the terms of the Plan." *Spradley v. Owens-Illinois Hourly Employees Welfare Ben. Plan*, 686 F.3d 1135, 1140 (10th Cir. 2012). "Serious procedural irregularities" can require the court to apply "de novo review where deferential review would otherwise be required." *Martinez v. Plumbers & Pipefitters Nat'l Pension Plan*, 795 F.3d 1211, 1215 (10th Cir. 2015). Plaintiffs allege that Anthem failed to respond in a timely manner to Mike's appeal of the denial of Aspiro benefits and that

Anthem failed to provide a meaningful dialogue with Mike regarding the claim for treatment at Uinta. Plaintiffs allege that Anthem breached its fiduciary duties when it failed to comply with its obligations under 29 U.S.C. § 1004 and § 1133, when it failed to act solely in the interest of the Plan participants and beneficiaries, and when it failed to discharge its duties in accordance with the documents governing the Plan. For these reasons, Plaintiffs allege that the court should apply a de novo standard.

### a. Aspiro Claim

Mike appealed the denial of the Aspiro benefits on October 1, 2015. Anthem received the appeal on October 5, 2015. The Plan document requires Anthem to respond within thirty days of receipt of a written request for appeal. Mike alleges he did not receive a copy of the response to the Aspiro appeal until it was provided by KDOI in response to Mike's complaint. But Anthem alleges that it sent the response letter on November 4, 2015. In support, Anthem has provided a copy of the letter. Whether or not Mike received the letter, it is apparent from the record that Anthem did send the letter as required by the Plan. Anthem then fully participated in the investigation conducted by the KDOI, engaging in meaningful dialogue regarding its denial. The court finds that Anthem complied with the Plan's appeals process and is entitled to the deferential arbitrary and capricious standard on review of the Aspiro denial.[2]

---

[2] The court does not address whether substantial compliance entitles Anthem to a de novo standard of review, because the court finds that Anthem complied with the plan procedures. *See Joseph F. v. Sinclair Servs. Co.*, 158 F. Supp. 3d 1239, 1251 n.55 (D. Utah 2016) (explaining that "[i]n *Kellogg v. Metropolitan Life Insurance Co.*, 549 F.3d 818, 827–28 (10th Cir.2008), the Tenth Circuit left open the question of whether the substantial compliance rule still applies under the revised 2002 ERISA regulations.").

### b. Uinta Claim

Plaintiffs allege that Anthem failed to provide a meaningful dialogue in handling the claims for Maddie's Treatment at Uinta because the communications regarding its denial of benefits failed to rise to the level of specificity required by ERISA. Although the EOBs sent to Mike regarding the Uinta treatment only specify that the treatment was not pre-certified, Anthem's letter of November 10, 2015 specifies that Anthem considered the Uinta services not medically necessary and therefore not covered under the Plan. The letter then includes the full conclusion of the "physician consultant." The consultant concluded that Maddie was not "at risk for serious harm" and that "24 hour structured care" was not needed. The letter directed Plaintiffs to the "clinical guideline" used by the physician to determine whether treatment was medically necessary. The guideline, "Psychiatric Disorder Treatment – Residential Treatment Center CG-BEH-03" was not provided to Mike, but he was able to access it and read over the criteria used to deny coverage in writing his appeal. In response to Mike's appeal, Anthem sent another letter on June 1, 2016, upholding the denial of coverage. The letter specified which doctors reviewed the information provided and which guidelines Anthem used to make its decision. Finally, when Mike requested an external review of the decision, Anthem provided one.

Although Mike alleges that these responses legally do not constitute meaningful dialogue, the court disagrees. Anthem explained what documents it reviewed, identified the doctors who reviewed the documents, and referenced the specific provisions that Anthem used to decide the claim. Anthem responded to Plaintiffs in a timely fashion and gave the specific reasoning for the denial of benefits. As the court in *Joseph F. v. Sinclair Servs. Co*., 158 F. Supp. 3d 1239 (D. Utah 2016) noted, just because the Administrator failed to address all of the Plaintiffs' arguments does not mean that the Plaintiffs were prejudiced. *Id.* at 1252. ("[Plaintiffs] cannot plausibly maintain that they were not fully aware of the rationale underlying the Administrator's decisions."). Anthem

continued to engage in the dialogue and provided Mike with the necessary information. Thus, the court concludes that Anthem is entitled to an arbitrary and capricious standard of review on both the Uinta and the Aspiro claims.

### 3. Anthem is Inherently Conflicted

In their motion for summary judgment, Plaintiffs also allege that Anthem had a conflict of interest. In *Pitman v. Blue Cross & Blue Shield of Oklahoma*, 217 F.3d 1291, 1296 n.4 (10th Cir. 2000), the Tenth Circuit held that a company that is both the insurer and the administrator is inherently conflicted because "as both insurer and administrator of the plan, there is an inherent conflict of interest between its discretion in paying claims and its need to stay financially sound." Anthem is both the insurer and the administrator in this case, and is therefore inherently conflicted.

Nevertheless, Plaintiffs are not entitled to a de novo standard of review as a result of the conflict. As the Supreme Court held in *Metropolitan Life Insurance Co. v. Glenn*, 554 U.S. 105, 116 (2008), the conflict of interest is merely a factor the court must consider when deciding whether the decision was arbitrary and capricious. The court will still "always apply an arbitrary and capricious standard, but [will] decrease the level of deference given . . . in proportion to the seriousness of the conflict." *Scruggs v. ExxonMobil Pension Plan*, 585 F.3d 1356, 1361 (10th Cir. 2009) (alteration in original) (quoting *Weber v. GE Grp. Life Assurance Co.*, 541 F.3d 1002, 1010 (10th Cir. 2008)). To determine the seriousness of the conflict, the court must engage in a "'combination-of-factors method of review' that allows judges to 'tak[e] account of several different, often case-specific, factors, reaching a result by weighing all together.'" *Holcomb v. Unum Life Ins. Co. of Am.*, 578 F.3d 1187, 1193 (10th Cir. 2009) (alteration in original) (quoting *Glenn*, 554 U.S. at 117). "A conflict 'should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision . . . [and] should prove less important (perhaps to the vanishing point) where the administrator has taken

active steps to reduce potential bias and to promote accuracy . . . .'" *Id.* (alteration in the original) (quoting *Glenn*, 554 U.S. at 117). The burden is on the plaintiffs to produce evidence regarding these factors. "Some proof (supplied by the claimant) must identify a conflict that could plausibly jeopardize the plan administrator's impartiality." *Adamson v. Unum Life Ins. Co. of Am.*, 455 F.3d 1209, 1213 (10th Cir. 2006). As the plaintiffs have not fully briefed the issue, the court will acknowledge the conflict, but give it little weight.

## III.    ANALYSIS

### A.  THE DENIAL OF PLAN BENEFITS

Plaintiffs seek to recover benefits allegedly due under the Plan for two wrongfully denied claims, first Maddie's treatment at Aspiro and second Maddie's treatment at Uinta, on the grounds that Anthem's decisions were arbitrary and capricious. The court addresses each claim in turn based only on the rationale offered by Anthem in the administrative record. "[W]hen reviewing a plan administrator's decision to deny benefits, we consider only the rationale asserted by the plan administrator in the administrative record and determine whether the decision, based on the asserted rationale, was arbitrary and capricious." *Flinders v. Workforce Stabilization Plan of Phillips Petroleum Co.*, 491 F.3d 1180, 1190 (10th Cir. 2007).

### 1.  Aspiro Treatment

Plaintiffs allege that the denial of benefits for Aspiro was wrongful because the Plan does not give Plaintiffs fair notice of the definition of wilderness camps or programs, Anthem did not offer a clear explanation as to why it considers Aspiro a wilderness camp, and Anthem gave conflicting reasoning for its denial of the Aspiro benefits. Additionally, Plaintiffs argue that the exclusion for wilderness camps violates the Mental Health Parity and Addiction Equity Act (the

"MHPAEA" or the "Parity Act"), 29 U.S.C. § 1185a.[3] Because the court finds that Anthem's decision to deny coverage, made exercising its discretion as the plan administrator, was arbitrary and capricious, the court does not reach the issue of whether the Plan violates the Parity Act.

### a. The Decision to Deny Coverage was Arbitrary and Capricious

Anthem gave two initial reasons for denying Plaintiffs' claims. First, in the EOBs, Anthem stated that Aspiro was not pre-certified and second, in the May 5, 2015 letter, Anthem stated that Aspiro is a wilderness camp and wilderness camps are not covered by the plan.

### i. The Inconsistent Reasoning Was Not Arbitrary and Capricious

Plaintiffs first argue that the inconsistency in reasoning denied them the statement of Anthem's specific reasoning that is required by law. *See Spradley v. Owens-Illinois Hourly Employees Welfare Ben. Plan*, 686 F.3d 1135, 1140–41 (10th Cir. 2012) (Under 29 U.S.C. § 1133 "[a] plan administrator is required by statute to provide a claimant with the specific reasons for a claim denial."). Plaintiffs also argue that because Anthem's reasoning was inconsistent, it is arbitrary and capricious and that this court must not allow Anthem to "sand-bag" the process by changing its reasoning.[4] But that is not the case. Although Tenth Circuit law forbids Plan administrators from making arguments before the district court that were not offered in the administrative record, administrators can rely on different rationales that are reflected in the record. *Spradley*, 686 F.3d at 1140–41 (citing *Flinders*, 491 F.3d at 1190-92). In this case, Anthem offered

---

[3] "The MHPAEA expanded the scope of prior legislation, the Mental Health Parity Act of 1996, Pub.L. No. 104–204, §§ 701–02, 110 Stat. 2874, 2944." *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 356 (2d Cir. 2016).

[4] "The reason for this rule is apparent '[w]e will not permit ERISA claimants denied the timely and specific explanation to which the law entitles them to be sandbagged by after-the-fact plan interpretations devised for purposes of litigation.'" *Flinders v. Workforce Stabilization Plan of Phillips Petroleum Co.*, 491 F.3d 1180, 1091 (10th Cir. 2007) (alteration in original) (quoting *Marolt v. Alliant Techsystems, Inc.*, 146 F.3d 617, 620 (8th Cir.1998)).

both explanations at the initial denial phase of the proceedings, providing Plaintiffs with the opportunity to prepare a meaningful appeal.[5] Anthem abandoned its argument that denial was appropriate based on Plaintiffs' failure to obtain precertification early in the claims appeal process, but Plaintiffs have not been prejudiced as a result because Anthem has not argued in this court that precertification was the reason for its denial of the Aspiro benefits. Therefore, the court will not address this argument further. Instead, the court must decide whether denying coverage for the Aspiro treatment because it is a wilderness Camp was arbitrary or capricious.

### ii. The Term Wilderness Camp is Ambiguous

In the Tenth Circuit, a court reviewing an administrator's decision that relies on an interpretation of language in an ERISA plan will first determine whether such language is ambiguous. *See Scruggs v. ExxonMobil Pension Plan*, 585 F.3d 1356, 1362 (10th Cir. 2009). "Ambiguity exists where a plan provision is reasonably susceptible to more than one meaning, or where there is uncertainty as to the meaning of the term." *Id*. (quoting *Miller v. Monumental Life Ins. Co.,* 502 F.3d 1245, 1250 (10th Cir. 2007)). The court is to "consider the common and ordinary meaning as a reasonable person *in the position of the plan participant*, not the actual participant, would have understood the words to mean." *Weber v. GE Grp. Life Assurance Co.*, 541 F.3d 1002, 1011 (10th Cir. 2008) (emphasis in the original) (quoting *Miller*, 502 F.3d at 1250).

---

[5] The court does not address the situation where the Administrator offers an initial explanation and then later on in the appeals process creates entirely new reasons not addressed in the initial denial. *Spradley*, 686 F.3d at 1140–41 ("Those goals are undermined where plan administrators have available sufficient information to assert a basis for denial of benefits, but choose to hold that basis in reserve rather than communicate it to the beneficiary. Such conduct prevents ERISA plan administrators and beneficiaries from having a full and meaningful dialogue regarding the denial of benefits.")

The Plan states that "wilderness camps" are not covered benefits at page M-57, exclusion number 23.[6] But the Plan does not contain any definition of wilderness camp. On its face, the court finds that the phrase "wilderness camp" is ambiguous. The term could just as easily be applied to exclude a children's summer camp as it could be applied to exclude a "Wilderness Adventure Therapy" program such as Aspiro. Because the term has multiple, equally valid definitions, the court finds that the term is ambiguous.

### iii.   Excluding coverage of Aspiro was Arbitrary and Capricious

When "a plan provision is ambiguous, under the arbitrary and capricious standard, then we 'take a hard look and determine' whether the plan administrator's interpretation of the ambiguous language was 'arbitrary.'" *Scruggs*, 585 F.3d at 1362 (*quoting Weber*, 541 F.3d at 1011) (noting that this is especially true when the Administrator is conflicted). In reaching this decision, the court looks only to the administrative record and the explanations offered therein.

In correspondence with Plaintiffs, Anthem does not define wilderness camp or program but merely asserts that Aspiro is an excluded wilderness camp. Then, in correspondence with KDOI, Anthem offers the following explanation:

> For "wilderness camp," Anthem relies on the description of the program and services to be provided by the provider requesting the pre-certification/pre-authorization, the licensing of the facility/program, and in some circumstances the diagnosis, level of intensity of service, and/or credentialing. In some cases, when claims are filed, Anthem relies on an external coding source, Optum 360 EncoderPro. For example, per Optum 360 EncoderPro, "wilderness camp" is described as follows: Therapeutic camping is used to teach life and coping skills in an outdoor wilderness

---

[6] The clinical guideline for "Psychiatric Disorder Treatment – Residential Treatment Center (RTC) CG-BEH-03" states that wilderness programs are not considered residential treatment centers, but wilderness program is still not defined therein, nor was this document provided to Mike as part of his Aspiro appeal. It is only included in the explanation for the denial of Uinta coverage and is not considered here.

> environment. Therapeutic camping may be directed to individuals
> with mental health, behavioral health, or medical health needs.

While this definition at least provides some guidance, it is not part of the Plan and was not offered to Mike during his appeal process. Rather, it is part of a dialogue between KDOI and Anthem. What is more, it is still not clear that Aspiro fits the definition.

Aspiro is not a summer camp where children learn "life and coping skills" in an outdoor setting. Rather, Aspiro offers "short-term, intermediate treatment options for teenagers and young adults," including an "intensive outdoor treatment program" that "is residential in nature providing multidisciplinary treatment solutions that are safe, effective, and clinically sophisticated." These characteristics all point to an "intensity of service" not available at a typical summer camp. And although Aspiro is licensed in Utah as an Outdoor Youth Program (Utah Admin. Code R501-8, *et. seq.*) and not as a Residential Treatment Center (Utah Admin. Code R501-19, *et. seq.*), that does not mean it is automatically excludable as a wilderness camp. In Utah, Outdoor Youth Programs are required to have licensed staff on hand consisting of a "multi-disciplinary team" that includes a licensed physician and other licensed treatment professionals. In fact, Aspiro has a large team of registered nurses, medical doctors, licensed clinical social workers, and licensed professional counselors. So although Aspiro is not a true Residential Treatment Center, Aspiro provides an intermediate-level of care to treat mental health conditions that could be covered by the Plan— treatment just happens to be in an outdoor environment.[7]

Because Aspiro does involve an outdoor component, it is feasible that the definition provided to KDOI could apply to Aspiro, but nowhere in the record does Anthem actually apply

---

[7] At oral argument, Anthem admitted that Aspiro offered an intermediate-level of care.

the definition to Aspiro.[8] Because the burden is on Anthem to show that an exclusion applies,[9] and Anthem has not met that burden, the court finds that excluding coverage for the services provided by Aspiro was arbitrary and capricious.

### b. Does the Denial of Coverage for Wilderness Camps Violate the Parity Act?

Because the court finds that the exclusion of coverage for the care that Maddie received at Aspiro was arbitrary and capricious, the court does not reach whether a blanket exclusion for wilderness camps violates the Parity Act. Nevertheless, the court will briefly address the issues raised by Plaintiffs to guide Anthem on remand, because the court is concerned that a blanket exclusion for all wilderness camps, which in practice has only been applied to mental health treatment, may constitute a violation.

"Congress enacted the MHPAEA to end discrimination in the provision of insurance coverage for mental health and substance use disorders as compared to coverage for medical and surgical conditions in employer-sponsored group health plans." *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 356 (2d Cir. 2016). "Specifically, the MHPAEA requires group health plans (or insurers) to ensure that the 'financial requirements' and 'treatment limitations' that are applicable to mental health or substance use disorder benefits are 'no more restrictive' than the predominant financial requirements or treatment limitations applied to substantially all medical and surgical benefits covered by the plan (or coverage)." *Coal. for Parity, Inc. v. Sebelius*, 709 F. Supp. 2d 10, 13 (D.D.C. 2010). The implementing regulations, 29 C.F.R. § 2590.712(c)(4)(i), provide that a plan:

---

[8] KDOI reviewed the definition provided above and the documents regarding Aspiro provided by Mike and determined that Aspiro was a wilderness camp, but the court does not owe any deference to a third-party reviewer's interpretation of the Plan.

[9] *See Pitman v. Blue Cross & Blue Shield of Okla.*, 217 F.3d 1291, 1298 (10th Cir. 2000).

> may not impose a nonquantitative treatment limitation with respect
> to mental health . . . benefits in any classification unless, . . . any
> processes, strategies, evidentiary standards, or other factors used in
> applying the nonquantitative treatment limitation to mental health ...
> benefits in the classification are comparable to, and are applied no
> more stringently than, the processes, strategies, evidentiary
> standards, or other factors used in applying the limitation with
> respect to medical surgical/benefits in the classification.

Unfortunately, there is no clear law on what is required to state a claim for a Parity Act violation. The baseline standard followed by many courts is laid out in *A.H. by & through G.H. v. Microsoft Corp. Welfare Plan*, No. C17-1889-JCC, 2018 WL 2684387, at *6 (W.D. Wash. June 5, 2018):

> To state a Parity Act violation, a plaintiff must show that: (1) the
> relevant group health plan is subject to the Parity Act; (2) the plan
> provides both medical/surgical benefits and mental health or
> substance use disorder benefits; (3) the plan includes a treatment
> limitation for mental health or substance use disorder benefits that
> is more restrictive than medical/surgical benefits; and (4) the mental
> health or substance use disorder benefit being limited is in the same
> classification as the medical/surgical benefit to which it is being
> compared.

But this framework is difficult to apply to Plaintiffs' challenge to Anthem's blanket wilderness camp exclusion for several reasons.

First, the wilderness camp exclusion is neutral on its face. Several courts have dismissed Parity Act claims that challenge facially neutral wilderness act exclusions because it is possible that the exclusion is applied equally to mental health treatment as it is to medical and surgical treatment plans. *See id.* at *7; *see also Welp v. Cigna Health & Life Ins. Co.*, No. 17-80237-CIV, 2017 WL 3263138, slip op. at 5 (S.D. Fla. July 20, 2017). But in practice, wilderness camp exclusions have only been applied to outdoor behavioral and mental health treatment programs, and thus the effect of the limitation is that it imposes a limit on mental health treatment that does not apply to medical or surgical treatment.

Second, there is no clear surgical analog. In the case of *Joseph F. v. Sinclair Servs. Co.*, 158 F. Supp. 3d 1239, 1262 (D. Utah 2016), the court found that exclusion of coverage for services at residential treatment facilities violated the act because the plan did cover services at the clearly analogous skilled nursing facilities. Following *Joseph*, the court in *Roy C. v. Aetna Life Ins. Co.*, No. 2:17CV1216, 2018 WL 4511972, at *3 (D. Utah Sept. 20, 2018) dismissed a Parity Act claim because Plaintiffs had failed to plead a surgical analog. But unlike the comparison between residential treatment centers and skilled nursing centers, there is not a clear analog to wilderness camps in the medical or surgical field. Plans should not be able to exclude mental health treatments only because a clear analog does not exist.

The court in *Gallagher v. Empire HealthChoice Assurance, Inc.*, 339 F. Supp. 3d 248, 258 (S.D.N.Y. 2018) addressed the surgical analog issue by holding that plaintiffs need only assert that wilderness therapy was of the same classification as residential treatment and skilled nursing facilities to state a claim for relief. "The relevant comparison is not whether benefits for wilderness therapy are available for medical/surgical patients, but rather whether the Plan has chosen to provide benefits for skilled nursing facilities and rehabilitation centers for medical/surgical patients, but chosen to deny benefits to those with mental health conditions who seek coverage for a residential treatment center offering wilderness therapy." *Id.* The criticism of this approach is that it would seem to allow plaintiffs to make a claim for relief for any type of slightly comparable coverage in a general category, which would greatly increase the number of Parity Act claims beyond what the Act was intended to cover.

The court in *A.Z. v. Regence Blueshield*, 333 F. Supp. 3d 1069, 1080–82 (W.D. Wash. 2018) addressed both of these issues. In *A.Z.,* the court held that plaintiffs have two ways to allege a Parity Act violation. *Id.* First, a plaintiff can allege that the plan "categorically" denies coverage

in a way that violates the act. *Id.* at 1081–82. This challenge can target the language of the plan or the processes of the plan that implementing guidelines require to be applied in a nondiscriminatory manner. *Id.*; *see also* 29 C.F.R. § 2590.712(c)(4)(i) (stating that "processes, strategies, evidentiary standards, or other factors" may not be applied in a discriminatory manner). In *A.Z.*, although the court found that wilderness camp is a neutral term, plaintiffs successfully alleged that the categorical denial of "medically necessary services at outdoor/wilderness behavioral healthcare programs" asserted an improper "'process' . . . that qualifies as a discriminatory limitation." *A.Z,* 333 F. Supp. 3d at 1082 (citing *Bushell v. Unitedhealth Grp. Inc.*, No. 17-cv-2021-JPO, 2018 WL 1578167, at *6 (S.D.N.Y. March 27, 2018) and *Vorpahl v. Harvard Pilgrim Health Ins. Co.*, No. 17-CV-10844-DJC, 2018 WL 3518511, at *3 (D. Mass. July 20, 2018)).  Second, plaintiffs can allege that the exclusion is discriminatory in application because the administrator has in practice excluded wilderness therapy even when such exclusion is not permitted by the plan. *A.Z.*, 333 F. Supp. 3d at 1081–82.

Under the *A.Z.* framework, the exclusion at issue in this case is troubling. Anthem purports to exclude all "wilderness camps" and "programs" without offering any explanation. Anthem is fully within its right to exclude experimental or unsuccessful types of treatments, but excluding mental health treatment merely because it occurs outdoors appears to place a limitation on mental health that does not apply to medical or surgical treatments. To avoid a Parity Act violation, Anthem needs to provide a detailed explanation of why wilderness camps are not covered, especially when Plaintiffs have alleged violations of the Parity Act on appeal. Because the court finds that Anthem's exclusion of Aspiro benefits was arbitrary and capricious, the court does not reach a ruling on the Parity Act issues, but raises these points to guide the parties on remand

### 2. Uinta Treatment

Mike alleges that Anthem's denial of coverage for Maddie's Uinta treatment was arbitrary and capricious because Anthem "refused to engage in meaningful dialogue as required by ERISA's claims procedure regulations" and "failed to properly identify and apply the Plan's medical necessity criteria to Maddie's condition." Plaintiffs' Mot. S.J. at 3. Because the court has found that Anthem provided meaningful dialogue and is entitled to an arbitrary and capricious standard of review, it now addresses whether Anthem's denial of Maddie's treatment at Uinta was arbitrary and capricious based on the explanations offered in the record.

Residential treatment centers are not defined in the Plan, but rather are defined in the clinical guideline for "Psychiatric Disorder Treatment – Residential Treatment Center (RTC) CG-BEH-03" ("RTC Guidelines") that was referenced by Anthem in its initial Uinta denial letter. These guidelines also establish the criteria for whether treatment at a Residential Treatment Center is medically necessary.[10]

Under the Plan, Residential Treatment Center services are only medically necessary if all three of the following conditions are met:

> 1. The member is manifesting symptoms and behaviors which represent a deterioration from their usual status and include either self injurious or risk taking behaviors that risk serious harm and cannot be managed outside of a 24 hour structured setting or other appropriate outpatient setting; AND
> 2. The social environment is characterized by temporary stressors or limitations that would undermine treatment that could potentially be improved with treatment while the member is in the residential facility; AND
> 3. There should be a reasonable expectation that the illness, condition or level of functioning will be stabilized and improved and that a short term, subacute residential treatment service will have a

---

[10] It is uncontested that Uinta is a Residential Treatment Center. It is also uncontested that Maddie's treatment is only covered under the Plan if the treatment was medically necessary under the RTC Guidelines.

likely benefit on the behaviors/symptoms that required this level of care, and that the member will be able to return to outpatient treatment.

Plaintiffs do not contest that Anthem identified the correct factors. Plaintiffs only contest that Anthem correctly applied the factors to Maddie's case. The court reviews Anthem's decision under an arbitrary and capricious standard.

Anthem reviewed Maddie's medical record. In the letter to Mike dated November 10, 2015, Anthem concluded that Maddie was not at risk for serious harm without 24-hour care and that she could have been treated with outpatient services. Although not provided to Mike, the record includes the evaluation performed by the reviewing doctor, Dr. Charlisa Allen. Dr. Allen reviewed Maddie's medical records from Aspiro and Uinta and determined that Maddie did not meet the RTC Guideline criteria because she was not at risk for self-harm or suicidal behaviors and there was no evidence of risky behavior or a deteriorating condition.

Mike appealed the denial. Mike submitted additional documentation of Maddie's risky behavior prior to her time at Aspiro and submitted letters from Dr. Mansoor and Dr. Picus who had treated Maddie prior to her time at Aspiro. Both doctors had recommended Maddie enroll in an intensive therapeutic environment. Plaintiffs also included letters from other doctors and therapists. Plaintiffs asserted that Maddie had been at high-risk of injury or death prior to her time at Aspiro and Uinta because of her destructive behavior. Maddie's behavior included running away from home, promiscuity, and drug use. Plaintiffs asserted that Maddie needed the residential treatment center to keep her safe and stable on the road to recovery. These documents were then reviewed by Ernest Raba, M.D. on Anthem's behalf. Dr. Raba upheld the initial decision. Dr. Raba's reasoning for upholding the denial was that Maddie could have been treated on an outpatient basis following her time at Aspiro. This time, the name of the doctor and the doctor's

reasoning was provided in the letter, although Anthem still failed to specifically allege which documents supported its conclusions.

Upon receipt of the second denial letter, Mike requested an external review from an Independent Review Organization, Advanced Medical Reviews ("AMR"). AMR's psychiatrist evaluated the letters sent by Maddie's providers, the daily logs and treatment plans from Uinta (compiled by Melissa Adamson), and Maddie's evaluation by Aimee B. Goldstein. AMR determined that Maddie did not require Residential Treatment because her self-harming symptoms had subsided following her time at Aspiro and that she no longer needed intensive 24-hour care after her time there. AMR found that Maddie could have been treated at home with therapy sessions rather than in a residential treatment center.

The court reviews Anthem's decision on the Uinta claim under an arbitrary and capricious standard. "When reviewing under the arbitrary and capricious standard . . . , [t]he [administrator's] decision will be upheld unless it is not grounded on *any* reasonable basis.'" *Cirulis v. UNUM Corp.*, 321 F.3d 1010, 1013 (10th Cir. 2003) (*quoting Kimber v. Thiokol Corp.,* 196 F.3d 1092, 1098 (10th Cir.1999)). The court looks only to whether the decision was a reasoned decision, not whether it was necessarily the correct decision. *See Flinders v. Workforce Stabilization Plan of Phillips Petroleum Co.*, 491 F.3d 1180, 1193 (10th Cir. 2007). "The reviewing court need only assure that the administrator's decision fall[s] somewhere on a continuum of reasonableness— even if on the low end." *Cirulis*, 321 F.3d at 1013 (quoting *Kimber*, 196 F.3d at 1098).

Reviewing the record, the court concludes that Anthem's decision was grounded on a reasonable basis, if a slim one. Although Anthem consistently failed to offer detailed explanations to Mike regarding his claims, it did sufficiently inform him of its decision by directing him to the RTC Guidelines that were used and the fact that Maddie did not meet the criteria based on her

symptoms at the time she was released from Aspiro. Although all of Maddie's doctors prior to her time at Aspiro characterized treatment at a residential treatment center as medically necessary, the evaluations performed after her time at Aspiro, including a suicide risk assessment performed by Melissa Adamson, Maddie's counselor, concluded that Maddie's treatment at Aspiro had successfully placed her on the road to recovery and that she was no longer a risk to herself or others as she had been prior to her time there. Unfortunately, although Maddie's Aspiro providers all recommended residential treatment to keep Maddie from regressing, the RTC Guidelines clearly state that the patient must still meet all three of the initial RTC Guideline criteria to qualify for continued residential treatment benefits. The fact that Maddie was no longer spiraling and at risk of self-harm meant that she no longer qualified for covered residential treatment, no matter how beneficial the treatment was for her recovery. Thus, the court finds that Anthem's decision regarding the Uinta benefits was not arbitrary and capricious.

## B. REMEDY

The court's determination that Anthem's denial of the Aspiro benefits was arbitrary and capricious does not automatically entitle Plaintiffs to the remedy they seek. Indeed, the court's "final task is to determine the proper remedy." *DeGrado v. Jefferson Pilot Fin. Ins. Co.*, 451 F.3d 1161, 1175 (10th Cir. 2006). Plaintiffs seek a retroactive reinstatement of benefits, pre-judgment interest, and attorney's fees.

### 1. Remand

"[W]hen a reviewing court concludes that a plan administrator has acted arbitrarily and capriciously in handling a claim for benefits, it can either remand the case to the administrator for a renewed evaluation of the claimant's case, or it can award . . . benefits." *Id.* (citation omitted). Remand is proper "if the plan administrator 'fail[ed] to make adequate findings or to explain adequately the grounds of [its] decision." *DeGrado v. Jefferson Pilot Fin. Ins. Co*., 451 F.3d 1161,

1175–76 (10th Cir. 2006) (alteration in original) (quoting *Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1288 (10th Cir. 2002)). But a court should award benefits "only if the evidence clearly shows that the administrator's actions were arbitrary and capricious or 'the case is so clear cut that it would be unreasonable for the plan administrator to deny the application for benefits on any ground.'" *Caldwell*, 287 F.3d at 1289 (quoting *Gallo v. Amoco Corp.,* 102 F.3d 918, 923 (7th Cir.1996)).

In this case, the court has found that Anthem's decision to deny coverage of the Aspiro benefits was arbitrary and capricious because the Plan did not properly define wilderness camp and because the administrator failed to fairly evaluate Aspiro. Although Plaintiffs have succeeded on the merits of their challenge of the denial, Plaintiffs have not actually established that the Plan should have covered Maddie's treatment at Aspiro. It is not the court's role to interpret the Plan nor will the court award benefits when the Plaintiffs' right to the benefits are not entirely "clear-cut." *See Rekstad v. U.S. Bancorp*, 451 F.3d 1114, 1121–22 (10th Cir. 2006). For these reasons, the court remands the matter to Anthem to exercise its discretion as plan administrator. But the court reminds Anthem that it must exercise its discretion in good faith and that its determinations on remand may not contravene the court's conclusion that applying the term "Wilderness Camp" to Aspiro was arbitrary and capricious. The court also cautions Anthem to consider its duties under the Parity Act in reaching its decision.

### 2. Prejudgment Interest

In an ERISA matter, "[p]rejudgment interest is . . . available in the court's discretion." *Weber v. GE Grp. Life Assur. Co.*, 541 F.3d 1002, 1016 (10th Cir. 2008) (quoting *Benesowitz v. Metropolitan Life Ins. Co.,* 514 F.3d 174, 176 (2d Cir.2007)). But the court has not awarded damages and so the court will not award prejudgment interest.

### 3. Attorney's Fees

Under 29 U.S.C. section 1132(g)(1), a court "in its discretion may allow a reasonable attorney's fee" when a "claimant has achieved 'some degree of success on the merits.'" *Cardoza v. United of Omaha Life Ins. Co.*, 708 F.3d 1196, 1207 (10th Cir. 2013) (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 245 (2010)). Factors to guide a court's discretion include:

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of fees; (3) whether an award of fees would deter others from acting under similar circumstances; (4) whether the party requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

*Id.* "No single factor is dispositive and a court need not consider every factor in every case." *Id.*

In this case, Plaintiffs have achieved some success on the merits regarding the Aspiro claim. Although Anthem does not appear to have acted in bad faith, Anthem was culpable in failing to properly evaluate the Aspiro claim. And Anthem does have the ability to satisfy an award of fees. What is more, an award of fees should encourage Anthem to provide definitions for its exclusions in the future. The court also considers the fact that Plaintiffs challenged the wilderness camp exclusion under the Parity Act for the benefit of all plan participants and to resolve the complex legal issues associated therewith. This was a difficult case, and the record contains ample evidence on both sides, but Plaintiffs were partially meritorious in the end. For this reason, the court will award attorneys' fees to Plaintiffs for work performed by Plaintiffs' counsel on the Aspiro claim *only*. Plaintiffs' counsel should submit a petition for attorney's fees including an affidavit and calculation of fees based on his work on the Aspiro claim within 21 days of this order.

**ORDER**

The court **HEREBY GRANTS IN PART AND DENIES IN PART ANTHEM'S MOTION FOR SUMMARY JUDGMENT and GRANTS IN PART AND DENIES IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT.** Specifically:

1. Anthem's motion for summary judgment on Anthem's decision to deny coverage for Uinta services is granted;

2. Plaintiffs' motion for summary judgment on whether Anthem's decision to deny coverage for medical treatment received at Aspiro was arbitrary and capricious is granted;

3. Plaintiffs' request for prejudgment interest is DENIED;

4. Plaintiffs' request for attorney's fees is GRANTED IN PART. Plaintiffs' counsel should submit its petition for fees regarding the Aspiro claims within 21 days of this order; AND,

5. The court hereby **ORDERS** that this case be **REMANDED** to Anthem for proceedings consistent with this order.

Signed February 13, 2019

BY THE COURT

_Jill N. Parrish_
_____
Jill N. Parrish
**United States District Court Judge**
